UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:

                                             Case No: 8-23-74389-las

FREEDOM FACILITY MAINTENANCE LLC      Chapter 11

        Debtor.

---------------------------------------------------------------X

## STIPULATION AND AGREED FINAL ORDER FOR USE OF CASH COLLATERAL AND RELATED RELIEF

WHEREAS, the debtor filed a Motion on December 6, 2023 seeking the authorization to use cash collateral pursuant to 11 U.S.C. § 363(c)(2), directing the turnover of accounts receivables owed by Transformco Properties DMC Facility Services, Springwise Facility Management and JKL Solutions USA to the Debtor, and to provide adequate protection to the secured creditor upon the submission of evidence to establish the existence of a security interest in the assets of the debtor (the "Motion") (ECF #20); and notice having been provided to all impacted creditors, their counsel, if known and all other parties in interest; and

WHEREAS, the Court having held an initial hearing on the Motion on December 12, 2023 and upon the consideration of the motion and all pleadings related thereto; and it appearing that the relief requested would in the best interests of the Debtor's estate, its creditors and other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor, on December 22, 2023, the Court entered an Interim Order (a) authorizing the Debtor to use cash collateral from the Petition Date (as defined in the Motion) through January 12, 2024, (b) directing Transformco Properties, DMC Facility Services, Springwise Facility Management and JKL Solutions USA  to remit any and all accounts payable owed to the to the debtor up to and including the date of entry of the Order, and (c) setting down a continued Hearing for January 11, 2024 at

10:00am before the Court to consider entry of a final order (the "Final Order") approving the relief granted herein on a final basis (ECF #30) ; and the Order having been served upon all parties in interest; and

WHEREAS, Fox Capital having filed an objection to the use of cash collateral and the release of certain receivables owed to the Debtor by DMC Facility Services, and interested party DMC Facility Services also having filed a limited objection with respect to the receivable it is holding; and

WHEREAS, the parties to this Agreed Order desire to compromise and settle any possible claims which the parties may assert in this Chapter 11 case without the necessity of prolonged motion practice;

WHEREAS, the parties have had the opportunity to consult with counsel of their respective choice in connection with the matters raised in this Agreed Order.

NOW THEREFORE, THE PARTIES STIPULATE AND AGREED THAT:

a. The Debtor is authorized to use the cash collateral of BizFund and Fox Capital to pay its ordinary course operating expenses, including but not limited to administrative overhead, post-petition rent and real estate taxes, and such additional expenses as are necessary in connection with its ongoing business operations from January 12, 2024 through the effective date of the Debtor's Subchapter V Plan of Reorganization or the conversion or dismissal of this case, whichever occurs first;

b. <u>Claim of Fox Capital</u> – Fox Capital shall have an allowed secured claim in the amount of $116,728.74.

c. <u>Claim of BizFund</u> – Bizfund, LLC shall have an allowed secured claim in the amount of $147,450.00.

d.  Release of Receivable Held by DMC Facility Services – The parties acknowledge and agree that the receivable owed by DMC Facility Services to the Debtor is $70,000.00. DMC shall release $16,728.74 to Fox Capital, $40,000.00 to Yaphank Main Street Partners (as a payment toward post petition rent for the period from November 22, 2023 to January 31, 2024) and $13,271.26 to the Debtor within ten (10) business days of entry of this Agreed Order.  Prior to delivery of payment, each payee shall provide DMC Facility Services with a W-9 for tax purposes and reasonable specific directions as to where to mail each payment and any reasonable specific directions regarding the mailing and delivery of the payment. If a payee wishes payment by Federal Express, it shall provide DMC Facility Services with its Federal Express number and authorize Federal Express to charge its account accordingly.  Upon the release of the above sums by DMC Facility Services, the parties to this Order shall release and hold DMC Facility Services harmless as to any claims with respect to the funds released pursuant to this Agreed Order.

e.   Adequate Protection Payments - BizFund.   No adequate protection payments shall be paid to Bizfund under the terms of this Agreed Order until the effective date of the Debtor's confirmed Subchapter V Plan of Reorganization.

f.   Payments to Fox Capital - The Debtor shall remit monthly payments of a minimum of $2,500.00 per month to Fox Capital, which may be adjusted based on cash flow projections included in the Subchapter V Plan, commencing February 15, 2024 and on the 15th day of each month thereafter for the next 39 months or until Fox has been paid the aggregate sum of $100,000.00.  In consideration for the commencement of the remittance of monthly payments and the release of a portion of the receivable held by

DMC to Fox set forth above, Fox agrees to vote in favor the Subchapter V Plan to be proposed by the Debtor in this case, so long as the Plan incorporates the terms of this Stipulation and provides for full payment of Fox's claim and the Debtor is not in default under the terms of this Order. Fox reserves the right to seek conversion or dismissal of the case and any other relief permitted by applicable law if the Debtor defaults on the terms of this Stipulation.

g. <u>Adequate Protection Lien – Bizfund</u> - BizFund, LLC is granted adequate protection for the use of cash collateral in the form of replacement liens, to the extent its asserted prepetition liens are valid and enforceable, against the Debtor's post-petition accounts receivable, cash receipts and payment intangibles. Such replacement liens shall be deemed to have been perfected and automatically effective as of the entry of this Order, without the necessity of filing any UCC-1 financing statement, UCC continuation statement, notice, or other instrument or document in any state, local or other office or department or in any other public record, subject to the "Carve Out" (defined below).

h. <u>Lien – Fox Capital</u>. To the extent of any diminution in the value of the any of the debtor's collateral, including its cash collateral, Fox Capital has established the existence of a valid security interest in the assets of the debtor and therefore is granted valid, binding and enforceable post-petition liens upon and security interests in all assets of the Debtor, regardless of whether such assets are acquired by the Debtor prior to the Petition Date or after the Petition Date (the "Collateral") which liens shall be senior to all other security interest in, liens upon or claims against any of the Collateral (the "Lien"), subject to the Carve Out (defined below). The Adequate Protection Liens shall be effective and perfected as of the Petition Date and without the necessity

of the execution, recording or filing of mortgages, security agreements, pledge agreements, financing statements or other documents). The Liens shall be enforceable against the Debtor, its estate and any successors thereto, including without limitation, any trustee or other estate representative appointed in this case, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of this Chapter 11 case, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").

      i.      <u>Carveout</u>. The carveout shall include (i) the payment of compensation to the Subchapter V Trustee; (ii) fees and expenses of a Chapter 7 trustee in an amount not to exceed $10,000; (iii) the fees and expenses of the Debtor's retained professionals and Committee retained professionals incurred and accrued on or prior to the entry of an Order of Confirmation (or a termination event as a result of an uncured Event of Default) to the extent that the amounts are approved by the Bankruptcy Court upon proper notice and motion, not to exceed in the aggregate the sum of $50,000.00 and (iv) all avoidance actions under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code and the proceeds thereof (collectively, the "Carveout"). The Replacement Liens shall not attach the Carveout as defined herein. Any Creditor that establishes the right to be paid adequate protection payments shall not be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to any collateral.

      j.      <u>Modification of Automatic Stay</u>. The automatic stay provisions of section 362 are hereby modified to permit (a) the Debtor to implement and perform the terms of this Stipulation and Agreed Order; and (b) the Debtor to create, if required, to the extent permitted, the Replacement Liens and other liens granted hereunder, and the any such Creditor shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect the Liens granted by this Stipulation and Agreed Order or to take any other actions to

perfect such Liens, which shall be deemed automatically perfected by the docketing of this Interim Order by the Clerk of the Court. If however, a Creditor elects for any reason to file, record or serve any such financing statements or other documents with respect to the Liens, the Debtor shall execute same upon the request of the Creditor and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of the chapter 11 case on the Petition Date; provided that any stay relief with respect to the exercise of remedies shall be in accordance with such provisions below or as otherwise ordered by the Court.

k. Except to the extent permitted until the date of the continued hearing, the Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, including any cash collateral, without the prior order of this Court.

l. Events of Default. The occurrence of any of the following events, unless waived by a Secured Creditor in writing, shall constitute an event of default and immediately terminate the Debtor's limited authorization under this Order to use cash collateral (collectively, the "Events of Default"):

   i. Failure by the Debtor to timely payments as required by this Stipulation;
   ii. Use by the Debtor of cash collateral in excess of the Budget and the 10% variance
   iii. The entry of any order by the Court granting relief from or modifying the automatic stay;
   iv. Dismissal of this Chapter 11 case or conversion of this Chapter 11 case to a Chapter 7 case, or appointment of a Chapter 11 trustee, or examiner with enlarged powers, or other responsible person; and/or
   v. A default by the Debtor in reporting financial or operational information as and when required under this Order that is not cured by the Debtor within five (5) business

days following delivery of written notice of such default (whether by fax, e-mail, U.S. Mail, or overnight delivery) to the Debtor's counsel and the Office of the United States Trustee.

m.      <u>Reservation of Rights and Bar of Challenges and Claims</u>. The rights of any creditor, Debtor, party in interest, Committee or trustee, to dispute or challenge the validity, perfection, extent, amount and priority of the claims and liens of any scheduled creditor (collectively, a "Challenge") are expressly preserved unless the validity of the claims and liens has already been expressly established herein.

n.      <u>No Third-Party Rights</u>. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

o.      <u>No Liability to Third Parties</u>. In not objecting to the Debtor's use of the cash collateral under the terms set forth herein or in taking any other actions related to this Order, Secured Creditors (i) shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute), and (ii) shall not owe any fiduciary duty to the Debtor, its creditors or its estate. The Secured Creditor's relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership with the Debtor.

p.      <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) any

creditor's right to seek any other or supplemental relief in respect of the Debtor, including the right to seek additional adequate protection (without prejudice to any other person's right to object to or otherwise oppose such additional adequate protection); or (b) any of the rights of creditors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Bankruptcy Code § 362, and (ii) request dismissal of the Chapter 11 case.

      q.    <u>Authorization</u>. Each of the undersigned represents and warrants that it has full and requisite power and authority to execute and deliver this Order. The Parties are authorized, empowered and directed to execute and deliver all other agreements, instruments and documents and take any and all other actions in order to effectuate this Order.

      r.    <u>Survival</u>. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any Order that may be entered: (a) confirming any Chapter 11 plan in this case; (b) converting this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing this Chapter 11 case; or (d) pursuant to which this Court abstains from hearing this Chapter 11 case.  The terms and provisions of this Order, including the claims, liens, security interests and other protections granted pursuant to this Order, notwithstanding the entry of any such order, shall continue and shall maintain priority as provided by this Order; and that this Court may retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order. Last, the parties acknowledge and agree that this Stipulation, when entered as an Order by the Court, shall be final, non-appealable and effective immediately upon entry without further notice to the respective parties.

-    **INTENTIONALLY LEFT BLANK**    -

Dated: January 31, 2024

| | |
|---|---|
| Freedom Facility Maintenance LLC | Fox Capital |
| s/Richard S. Feinsilver | s/Shanna Kaminski |
| _____ | _____ |
| by: Richard S. Feinsilver, Esq.<br>Counsel to the Debtor | by: Shanna Kaminski, Esq.<br>Counsel to Fox Capital |
| | |
| DMC Facility Services | Yaphank Main Street Partners |
| s/Richard Schlaifer | s/Kevin Nash |
| _____ | _____ |
| By: Richard Schlaifer, Esq.<br>Counsel to DMC Facility Services | by: Kevin Nash, Esq.<br>Counsel to Yaphank Main Street |

BizFund LLC

s/Allison E. Yager

_____
By: Allison E. Yager
Counsel to Bizfund LLC

**SO ORDERED**



Dated: February 7, 2024
Central Islip, New York

Louis A. Scarcella
United States Bankruptcy Judge